**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**CHRISTOPHER B. BRINSON,**

     **Plaintiff,**

**vs.**                            **Case No.  5:23cv108-CAS**

**KILOLO KIJAKAZI,
Acting Commissioner,
Social Security Administration,**

     **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned magistrate

judge upon consent of the parties.  ECF No. 17.  It is now before the Court

pursuant to 42 U.S.C. § 405(g) for review of the final determination of the

Acting Commissioner (Commissioner) of the Social Security Administration

(SSA) denying Plaintiff's application for a period of disability and Disability

Insurance Benefits (DIB) pursuant to Title II of the Social Security Act (Act).

After consideration of the entire record, the decision of the Commissioner is

affirmed.

**I.  Procedural History**

On February 2, 2021, Plaintiff, Christopher B. Brinson, filed an

application for a period of disability and DIB and alleged disability beginning

May 1, 2018, and March 15, 2021, as amended during the hearing.[1]  Tr.

10, 58.  (Citations to the record (transcript/administrative record), ECF No.

11, shall be by the symbol "Tr." followed by a page number that appears in

the lower right corner.)  Plaintiff's last day insured for DIB is December 31,

2023.  Tr. 253.  Disability is based, in part, on back injury/surgery, diabetes,

diabetic neuropathy, anxiety/depression, veritable bowel syndrome, acute

sinus, tinnitus, sleep apnea, and severe knee pains.[2]  Tr. 17, 56-58, 67-68,

71-72, 246.

The application was initially denied on August 25, 2021, and upon

reconsideration on March 28, 2022.  Tr. 10, 85-103.  On September 7,

2022, Administrative Law Judge (ALJ) Janet McCamley held a telephone

hearing due to the extraordinary circumstance presented by the COVID-19

pandemic.  Tr. 10, 50-84.  Plaintiff testified.  Tr. 59-78.  April Rosenblatt, an

impartial vocational expert, testified.  Tr. 10, 78-84, 345-48 (Resume).

Quinn E. Brock, an attorney, primarily represented Plaintiff, although

---

[1]  Plaintiff previously filed a DIB application and a supplemental security income (SSI) application on May 2, 2018.  Tr. 52, 107.  The case proceeded to hearing; and, on April 24, 2020, ALJ Andrew Dixon, III, entered a decision denying Plaintiff benefits from December 18, 2017, through the date of the decision.  Tr. 117.  Based on Plaintiff's voluntary decision to allege disability beginning in March of 2021, and the Appeals Council denial of his request for review of his prior April 21, 2020, decision, ALJ McCamley expressly found no "basis for reopening the claimant's prior Title II application."  Tr. 10.

[2]  The ALJ discussed Plaintiff's allegations of disabling impairments and inability to work made in the claim forms, initial reconsideration, and hearing level.  Tr. 17-18.

Joseph Campbell, an attorney of the same firm, appeared at the hearing. Tr. 10, 37-42, 50, 133.

On September 21, 2022, the ALJ entered a decision and denied Plaintiff's application for disability from March 15, 2021, the amended alleged onset date, through the date of the decision.  Tr. 30-31.

Thereafter, Plaintiff requested the Appeals Council to review the ALJ's decision; the Appeals Council denied Plaintiff's request for review on March 27, 2023.  Tr. 1-6, 228-30.  The ALJ's decision stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

On April 21, 2023, Plaintiff filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties consented to have a United States Magistrate Judge conduct all proceedings.  ECF No. 17.  The parties filed memoranda of law, ECF Nos. 13, 15, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2023."  Tr. 12.

2. "The claimant has not engaged in substantial gainful activity since March 15, 2021, the amended alleged onset date."  *Id*.

3. "The claimant has the following severe impairments: Type II diabetes mellitus with peripheral neuropathy; lumbar degenerative disease; irritable bowel syndrome; hypertension, and right knee chrondromalacia." *Id*. The ALJ determined that these impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28." Tr. 12-13. The ALJ also noted that Plaintiff "has other medically determinable impairments than recognized above, such as mild obstructive sleep apnea or non-proliferative diabetic retinopathy, as well as various acute ailments." Tr. 13 (citations to exhibits omitted). The ALJ further noted that Plaintiff "has also alleged depression, most recently during the hearing," but found it "was not a medically determinable impairment." *Id*.

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[3] Tr. 14. In part, the ALJ considered the applicability of Listing 1.15 which "discusses disorders of the skeletal spine that results in compromise of a nerve root(s)." *Id*. Referring to Finding 5 in the decision, Tr. 16, the ALJ determined "that the record fails to show the required symptom severity, functional limitations, or enough objective medical findings to qualify under Listing 1.15." Tr. 14. Again, referring to Finding 5 in the decision, the ALJ determined that the claimant did not meet Listing 1.16 related to lumbar spinal stenosis resulting in compromise of the cauda equina. Tr. 14-15. Additionally, and again referring to Finding 5, the ALJ considered the criteria of Listing 1.18 which "addresses abnormality of a major joint (s) in any extremity" and determined the record "simply has not demonstrated the required symptom severity or functional limitations set out in this listing." Tr. 15. Further, the ALJ considered other listings under sections 4.00 (cardiovascular system) and 5.00 (digestive system) and Listing 11.14 (peripheral neuropathy) and determined that the record did not evidence findings of the required severity in each category. *Id*.

---

[3] The ALJ is not required to identify all impairments that should be considered severe. *See Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also Mariarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir. 1987). Plaintiff does not claim the ALJ omitted a severe impairment. ECF No. 13.

5. "[T]he claimant had the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b), except that the claimant is further limited to never climbing ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs; no more than occasional balancing, stooping, or crouching; and may never kneel or crawl.  In addition, the claimant can have no more than occasional exposure to workplace hazards such as moving machinery or unprotected heights.  Additionally, the claimant is precluded from performing outside work away from indoor bathroom facilities."  Tr. 16-17; *see also* Tr. 80 (hypothetical posed to the vocational expert (VE).[4]

6. "The claimant is unable to perform past relevant work" as a Cleaner, SVP 2; Parts Order/Stock Clerk, SVP 5; and Teacher Aide II, SVP 3, all with light exertion per the Dictionary of Occupational Titles (DOT) and as performed.  Tr. 28, 80-81.  To this end, the ALJ found "that except for his Teacher Aide II position, these jobs were performed within 15 years prior to the adjudication of this claim, and otherwise qualify as past relevant work."  Tr. 28.  The ALJ noted that the vocational expert testified a person with the claimant's background "would be unable to perform the identified past relevant work," except for the "substitute teacher position" which the ALJ did not include. Tr. 29, 78-80.  The ALJ agreed.  *Id*.

7. The claimant was born in 1972 and "was 49 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date.  The claimant subsequently changed age category to "closely approaching advanced age."  Tr. 29.  Plaintiff has at least a high school education and Plaintiff completed four or more years of college.  Tr. 17, 247.  Transferability of jobs is not material in this case.  Tr. 29.

8. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the

---

[4] "Occasionally" means: "activity or condition exists up to 1/3 of the time." *Dictionary of Occupational Titles* (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § IV Physical Demands-Strength Rating.  "Frequently" means: "activity or condition exists from 1/3 to 2/3 of the time."  *Id*.

national economy that the claimant can perform" such as Marker, Cashier II, and Mail Clerk, all unskilled (SVP 2) and light exertion.[5] Tr. 30, 80-81. (The VE testified that adding a limitation to the first two hypotheticals posed during the hearing that requires use of an assistive device for ambulation and uneven surfaces would place such a person at sedentary precluding all light work.  Tr. 83-84.) Plaintiff objects to the ALJ's RFC determination based on the evidence, but does not object to the VE's conclusion that Plaintiff can perform several jobs based on the hypothetical questions posed by the ALJ.

9. "The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2021, through the date of this decision, September 21, 2022."  Tr. 11, 30.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); *see also Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (Substantial evidence "means-and means only-such relevant evidence as a reasonable mind might accept as

---

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including one month."  *Dictionary of Occupational Titles* (DOT) (4th ed., rev. 1981), App. C: Components of the Definition Trailer, § II, SVP.  "[SVP] it is defined as the amount of elapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id*.  Unskilled work corresponds to an SVP of 1 and 2.  SSR  00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  *See Buckwalter v. Comm'r of Soc. Sec.*, 5 F.4th 1315 (11th Cir. 2021) (discussing SVP Levels 1 and 2).  Light work involves, in part, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

adequate to support a conclusion." (citations and internal quotation marks omitted)).  "Substantial evidence is more than a scintilla, but less than a preponderance."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'"  *Bloodsworth*, 703 F.2d at 1240 (citations omitted).  A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

---

[6]  Stated otherwise, this Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  *Id*.; *see also Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021).  This nuance in Social Security disability cases is applicable here.

economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  *Barnhart v. Walton*, 535 U.S. 212, 224 (2002).  In addition, an individual is entitled to DIB if he or she is under a disability prior to the expiration of his or her insured status.  *See* 42 U.S.C. § 423(a)(1)(A); *Moore v. Barnhart*, 405 F.3d at 1211; *Torres v. Sec'y of Health & Human Servs.*, 845 F.2d 1136, 1137-38 (1st Cir. 1988); *Cruz Rivera v. Sec'y of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986). Plaintiff had to prove that he became disabled on or before December 31, 2023, his date last insured.  Tr. 11.  A showing that an impairment became disabling after the expiration of the claimant's insured status is insufficient to establish eligibility for DIB.  *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (unpublished).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal the criteria listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[7]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding

_____

[7] An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon *all* of the relevant evidence including the claimant's description of limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*; *see* SSR 96-8p (July 2, 1996); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC.").  The responsibility for determining a claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  Relevant medical and other evidence includes, among other things, medical history, medical signs, and laboratory findings, (*i.e.*, side effects of medication), daily activities, lay evidence, recorded observations, and ethical source statements.  SSR 96-8p (July 2, 1996).

that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  *Phillips*, 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Chester*, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

A claimant bears the burden of proving he or she is disabled and is responsible for producing evidence in support of the claim.  *See* 20 C.F.R. § 404.1512(a); *Moore*, 405 F.3d at 1211.

An ALJ was required to weigh a medical opinion under prior regulations applicable to claims filed before March 27, 2017.  *See* 20 C.F.R. § 404.1520c, abrogating the "'treating-physician rule.'"  *Harner v. Soc. Sec. Admin., Comm'r,* 38 F.4th 892, 896 (11th Cir. 2022).  However, the regulations applicable to this case remove the treating source rule and state an ALJ "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s).  *See* 20 C.F.R. §

404.1520c(a).[8]

Stated otherwise, "ALJs are no longer required to give controlling

weight to a treating physician's opinion, as was mandated by federal

regulations and our prior caselaw in the past."  *Webster v. Kijakazi*, 19

F.4th 715, 718-19 (5th Cir 2021) (*citing* "82 Fed. Reg. 5853 (Jan. 18, 2017)

(commenting that the rule change would enable courts to focus on 'the

content of the evidence [rather] than on the source.'")).

The relatively new regulations control consideration of the proper

weight given to medical opinions.  *See* 20 C.F.R. § 404.1520c(a)-(c); *see

also* 20 C.F.R. § 404.1513(a)(2) (defining medical opinion).  The

---

[8] Here, the ALJ expressly stated:

As for the medical opinions and prior administrative medical
findings, pursuant to agency policy, I will not defer or give any
specific evidentiary weight, including controlling weight, to any prior
administrative medical findings or medical opinions, including those
from medical sources.  I have fully considered the applicable
medical opinions and prior administrative medical findings.
Pursuant to 20 CFR 404.1520c and SSR 17-2p, the above finding
is supported by reports from treating and examining physicians, as
documented in the medical evidence of record.  I have considered
these medical source reports, along with opinions from non-
examining Disability Determination Service medical consultants and
addressed them above and below accordingly in evaluating the
claimant's functional limitations.

Tr. 25.  The ALJ considered the medical opinion evidence of record, including the
opinion of Plaintiff's long-term treating physician, Dr. Ramirez.  Tr. 26-27; *see also*
Tr. 17 (referring to 20 C.F.R. § 404.1529 and SSR 16-3p).

Case No.  5:23cv108-CAS

regulations contain a source-level articulation requirement, *i.e.,* the ALJ considers multiple medical opinions from a source in a single analysis. 20 C.F.R. § 404.1520c(b)(1).  The ALJ is not required to address every limitation identified by a medical source.  *Id*.

Under the regulations applicable to this case, an ALJ must consider and assess medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) the specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion, including the source's familiarity with other evidence in the claim, or understanding of SSA policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c)(1)-(5).  "The most important factors we consider when we evaluative the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."  20 C.F.R. § 404.1520c(a); *see also Webster v. Kijakazi*, *supra*.  "Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."  20 C.F.R. § 404.1520c(b)(2).

Regarding "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  Regarding "consistency," "[t]he more consistent a prior medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  "A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder."  20 C.F.R. § 404.1520c(c)(3)(v).  "When we consider the medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 404.1520c(c)(5).  "[ALJs] are not required to adopt any prior administrative medical findings, but they must consider this evidence

according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."

20 C.F.R. § 404.1513a(b)(1).

When a claimant attempts to establish a disability based on his

subjective complaints, he must provide evidence of an underlying medical

condition in either objective medical evidence confirming the severity of the

alleged symptoms or that the medical condition reasonably could be

expected to give rise to the alleged symptoms.  *See* 20 C.F.R.

§ 404.1529(a) and (b); *Wilson*, 284 F.3d at 1225-26.

Furthermore, pain is subjectively experienced by the claimant, but

that does not mean that only a mental health professional may express an

opinion as to the effects of pain.  One begins with the familiar way that

subjective complaints of pain are to be evaluated:

> In order to establish a disability based on testimony of
> pain and other symptoms, the claimant must satisfy two
> parts of a three-part test showing: (1) evidence of an
> underlying medical condition; and (2) either (a) objective
> medical evidence confirming the severity of the alleged
> pain; or (b) that the objectively determined medical
> condition can reasonably be expected to give rise to the
> claimed pain.

*Wilson*, 284 F.3d at 1225.  *See* 20 C.F.R §§ 404.1529 (explaining how

symptoms and pain are evaluated); 20 C.F.R. § 404.1545(e) (regarding

RFC, total limiting effects).[9]  This is guidance for the way the ALJ is to evaluate the claimant's subjective pain testimony because it is the medical model, a template for a treating physician's evaluation of the patient's experience of pain.

To analyze a claimant subjective complaints, the ALJ considers the entire record, including the medical records; third-party and Plaintiff's statements; the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; the type and dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; treatment, other than medication, received for pain or other symptoms; and other factors concerning functional limitations and restrictions.  20 C.F.R § 404.1529(c)(1), (3)(i-vii).  The Eleventh Circuit has stated: "credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.").

The credibility of the claimant's testimony must be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. *Lamb v. Bowen*, 847

---

[9]  Although the ALJ did not expressly refer to the three-part standard, based on the ALJ's findings, discussion, and citation to 20 C.F.R. §§ 404.1529 and Social Security Ruling 16-3p, Tr. 17, *see also* Tr. 28, it is clear the pain standard was applied. *Wilson*, 284 F.3d at 1226.

F.2d 698, 702 (11th Cir. 1988); *see Moore v. Barnhart*, 405 F.3d at 1212

("credibility determinations are the province of the ALJ").  If an ALJ refuses

to credit subjective pain testimony where such testimony is critical, the ALJ

must articulate specific reasons for questioning the claimant's credibility.

*See Wilson v. Barnhart*, 284 F.3d at 1225.  Failure to articulate the reasons

for discrediting subjective testimony requires, as a matter of law, that the

testimony be accepted as true.  *Id*.  On the other hand, "[a] clearly

articulated finding with substantial supporting evidence in the record will not

be disturbed by a reviewing court."  *Foote v. Chater*, 67 F.3d 1553, 1562

(11th Cir. 1995).

## IV.  Legal Analysis

### The ALJ did not err when denying Plaintiff's application for DIB benefits.

Plaintiff argues the Commissioner's decision should be reversed

because the ALJ's findings regarding the three-part pain standard

established by the Eleventh Circuit are unsupported by substantial

evidence.  ECF No. 13 at 4.

1.

Plaintiff argues that he satisfied the first requirement of the pain

standard, *Wilson*, 284 F.3d at 1225, in light of his underlying medical

conditions, including peripheral neuropathy, lumbar degenerative disc

disease, etc., as evidenced "in the form of objective imaging of [his] lumbar spine and knees (Tr. 406-05, 722, 1109-10, 1154, 1297)."  ECF No. 13 at 6 (citations omitted).  Plaintiff further argues that he satisfied the third requirement of the pain standard because "his objectively determined medical conditions are of such a severity that they can reasonably be expected to cause the alleged pain.  Their intensity and persistence is documented by the objective evidence of record such as numerous clinical signs and symptoms…such as tenderness to palpation, limited and painful ranges of motion, positive patellar grind tests, positive straight leg raising (Tr. 1182), presence of spasms, lower back tightness, reduced muscle and grip strength, and guarding (Tr. 349, 717-18, 1148, 1156, 1168, 1182, 1193, 1195, 1398, 1403, 1408, 1412-13, 1419-20, 1439, 1444, 1449, 1453-54, 1458-59, 1466-67, 1471, 1475)."  ECF No. 13 at 6-7.  Noted treatments further documented his continued complaints along with the opinion of a nurse practitioner who noted Plaintiff "would benefit from the assistance of a walking cane to help with ambulation (Tr. 1409, 1455)" which he was later prescribed.[10]  ECF No.13 at 7.

---

[10]  Plaintiff describes his use of a cane for ambulation and "that he had difficulty with ambulation due to pain to his knee and neuropathy (Tr. 65-67)" and further "testified that he was unable to go back to work as a substitute teacher due to a combination of neuropathy, back pain, and irritable bowel syndrome (Tr. 71)."  ECF No. 13 at 7.

The bulk of Plaintiff's argument pertains to the observations that the ALJ either failed to consider relevant evidence supporting disability or misstated the evidence.  Plaintiff argues this Court should reverse the ALJ's decision because there is also evidence of record that supports his own assessment of the evidence.  However, even assuming *arguendo* that a preponderance of the evidence might support Plaintiff's interpretation, where substantial evidence also supports the Commissioner's decision below, here the ALJ's decision, this Court will affirm.  *Viverette*, 13 F.4th at 1314.  *See supra* at 7, n. 6.  Plaintiff proceeds as follows.

Plaintiff refers to findings by the ALJ that Plaintiff could perform basic tasks including but not limited to cooking, reading, watching television, performing household chores such as cleaning, washing dishes, ironing with encouragement, handling stress or changes in routine, performing part-time substitute teacher work, and other functions.  ECF No. 13 at 7-8, citing to Tr. 18.  Plaintiff notes that the ALJ referred to a function report and a third-party function report completed by Brandi Porter, but omitted "significant details" from the same report.  *Id*.  *See also* Tr. 289, 291, 297.

Plaintiff takes issue with the ALJ citing a number of records from 2018 through 2020 which, according to Plaintiff, "is odd given [Plaintiff] specifically amended his onset date to March 15, 2021, which [according to

Plaintiff] would render those records effectively irrelevant for the purposes of assessing consistency with [Plaintiff's] claims (Tr. 19, 58) [Tr. 21]." ECF No. 13 at 8.  (Plaintiff's original disability onset date was May 1, 2018, claiming his impairments prevented him from working prior to his amended onset date of March 15, 2021.  Tr. 10.  The ALJ's consideration of medical records prior to March 15, 2021, was not unreasonable.)

Plaintiff further claims that the ALJ "overlook[ed] key details" when referencing evidence in the record.  ECF No. 13 at 9.  Plaintiff refers to physical examinations of June 23, 2021, and in October 2021, and notes the ALJ did not refer to evidence which could be construed to be favorable to him.  *Id*.  For example, Plaintiff notes that the ALJ described Plaintiff's straight leg raising as negative, but did not refer to other notes of record which indicated that his straight leg raise was measured at 50° to the right and 45° to the left, which is far short of negative at 90°.  *Id*.; *see* Tr. 1085.[11] Plaintiff refers to the ALJ's characterization of his October 2021 treatment as "'conservative' and consisting of 'physical therapy, knee sleeve, and mobic (Tr. 22).'"  ECF No. 13 at 9.  Plaintiff points to other therapies of

---

[11] That same record indicated that Plaintiff's gait was steady with no device, with good foot clearance.  Right and left strength were all measured at 5/5.  Tr. 1085. Physical therapy evaluation was suggestive of chronic back pain and skilled physical therapy was recommended.  Plaintiff's rehabilitation potential was rated as fair. Barriers to rehabilitation were noted as adherence to home exercise program, chronic condition, and obesity.  *Id*.

"[Plaintiff's] knee while referencing a paragraph specifically explaining that a repeat knee injection would be performed in six weeks if pain persisted," and also that Plaintiff "might be a candidate for a total knee replacement (Tr. 1129)."  ECF No. 13 at 9; *see also* discussion of the December 2021 evaluation, claiming that the ALJ "dismissed" critical information.  ECF No. 13 at 9; Tr. 22.

Plaintiff refers to Dr. Sam Banner's consultative examination referencing "the plethora of positive clinical signs from the examination, but offered no explanation as to how they are inconsistent with [Plaintiff's] pain complaints Tr. 23."  ECF No. 13 at 9.  Another inconsistency is noted.  *Id*.

Finally, Plaintiff takes issue with the ALJ's consideration of the opinions of Joshua Ramirez, M.D., Plaintiff's treating neck and back doctor, and Dr. Sam Banner, D.O., a physical consultative examiner.  ECF No. 13 at 10 (referring to Tr. 27, 719, 1328-29).  Dr. Ramirez' opinion was most favorable to Plaintiff; he opined that Plaintiff was limited to less than a sedentary RFC with multiple absences, hence disabled.  Tr. 1329.  According to Plaintiff, the ALJ rejected Dr. Ramirez's opinion as it "was unsupported by the detailed objective evidence and clinical findings," without citing supporting evidence.  ECF No. 13 at 10; Tr. 27.

Plaintiff vigorously complains that the record supports his "complaints of pain, attempts at pain management, and objective documentation of pain causing impairments" and the ALJ "failed to properly apply the standard and failed to articulate specific reasons to discredit [Plaintiff's] pain complaints" all contrary to the Eleventh Circuit pain standard.  ECF No. 13 at 11.

Although there is concrete evidence supporting Plaintiff's claim of disability, overall, there is reported objective evidence from the record which is not consistent with Plaintiff's subjective complaints of *disabling* pain.  To accept Plaintiff's argument, requires this Court to substitute the Court's view and analysis of the evidence for that of the ALJ.  Although a close call, Plaintiff did not establish additional functional limitations that precluded activity within the RFC found by the ALJ.  Rather, the ALJ considered Plaintiff's physical (and mental impairments) and properly accounted for Plaintiff's functional limitations in the RFC.  *See* Tr.16-28.

2.

Turning to the ALJ's decision, the ALJ's conclusions related to Plaintiff's RFC are noted herein.  *See supra* at 5.  As a preliminary factual matter, the ALJ considered Plaintiff's background having attained the age

of 50 years.  Tr. 17.  The ALJ recounted Plaintiff's comments made in

claim forms and reports, alleging numerous impairments.  *Id*.

> The claimant reported these symptoms caused him
> difficulty with sleeping, balancing, concentrating,
> remember[ing] his medications, wearing shoes, lifting
> over 5-10 pounds, squatting, bending, kneeling, climbing
> stairs, seeing without corrective lenses, completing tasks,
> using hands, and sitting, standing, or walking long
> distances (B7E, B8E, B9E, B20E).  The claimant also
> reported that his impairments did not stop him from
> working part time (B1E).  In addition, though his
> medications caused low blood sugar, confusion,
> constipation, diarrhea, stomach pain, sleeplessness, and
> unsteadiness, the claimant reported that they were able to
> successfully alleviate his back pain and sometimes
> relieve his other symptoms (B7E, B8E, B9E, B14E).
> Third-party reports further corroborated his symptoms that
> he had difficulty remembering his grooming and
> medications, but it noted that he also did part-time work
> as a substitute teacher on his good days (B8E).

Tr. 17-18.

The ALJ also recounted Plaintiff's hearing testimony in some detail,

including that

> he was primarily disabled due to Type II diabetes mellitus
> with neuropathy in the toes, irritable bowel syndrome, and
> back pain.  He also testified to having a right knee injury
> and disabling depression, and that he was currently living
> in Florida with family.  However, he also confirmed that he
> had been living independently up until 2021.

Tr. 18.  Frequent bowel movements, prior to taking Metformin, and his A1c

sugar levels are noted.  *Id*.

There is some uncertainty regarding his last A1c level test "as he had been frequently driving/flying back and forth between Texas and Florida, living with a friend in Texas, visiting family, and getting care in the area."

*Id.*

> He further testified that he has been using a single prong cane "pretty much every day" since his slip and fall accident, for his persistent knee pain, back pain, and the numbness in his toes.  He characterized his pain as sharp and shooting.  He also estimated that he could not walk far without his cane, possibly only between 205-50 yards since his slip and fall. Prior to that he was generally able to walk around a quarter of a mile.  The claimant also stated that he was unsure why he did not report his slip and fall to his VA providers, had been noncompliant with his CPAP machine use, and confirmed that he has not had any treatment or prescription medication for his depression.  The claimant's remaining testimony at the hearing was otherwise generally consistent with the information provided on his claim forms (Hearing Testimony).

Tr. 18.

The ALJ determined that Plaintiff's "statements about the disabling intensity, persistence, and limiting effects of his symptoms" were "internally inconsistent and somewhat unsupported by the reported information[,]" and stated:

> Though the claimant alleged disabling exertional, postural, manipulation, and mental limitations, he also reportedly could still cook, read, watch television, perform household chores such as cleaning, washing dishes, and ironing with encouragement, handle stress or changes in

routine, perform part time substitute teacher work, follow
instruction, walk short distances, drive, ride in a car, go
outside daily without accompaniment, shop over the
internet, handle his own finances, and perform personal
care with no problems (B8E, B9E).[12] The claimant also
allegedly could still spend time with others in person and
over the phone daily, make medical appointments, and
had no problems getting along with family, friends,
neighbors, or authority figures (B8E)[13]

Moreover, the claimant's statements about the disabling
intensity, persistence, and limiting effects of his symptoms
are also not fully supported by the medical record.  For
example, turning to the medical evidence, the record
shows the claimant has established the medically
determinable impairments of Type II diabetes mellitus
with peripheral neuropathy; lumbar degenerative disc
disease; irritable bowel syndrome; hypertension; and right
knee chondromalacia. However, the medical record does
not support the intensity, persistence, or limiting effects of
the claimant's related symptoms, to the disabling extent
alleged.

*Id.*

Thereafter, the ALJ discussed Plaintiff's extensive physical

complaints, diagnoses, and treatments.  Tr. 19-25.  The ALJ recounts

Plaintiff's presentations to VA facilities in Tallahassee and Gainesville

---

[12]  Plaintiff was able to work part-time after his alleged onset date.  Tr. 17, 67-68,
270-71, 296.  *See* 20 C.F.R. § 404.1529(c)(vii); *see also* 20 C.F.R. § 404.1571
(work…that you have done during any period in which you believe you are disabled may
show that you are able to work at the substantial gainful activity level).

[13]  Although not dispositive, the claimant's activities may show that his symptoms
are not as limiting as alleged and as reflected in the ALJ's RFC.  *See Macia v. Bowen*,
829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3)(i);
SSR 16-3p.  *But see Lewis v. Callahan*, 125 F.3d at 1441 ("participation in everyday
activities of short duration, such as housework or fishing" does not disqualify a claimant
from disability).

between July of 2016 and August of 2022.  Tr. 19.  Plaintiff had a history of reporting obstructive sleep apnea, knee pain, Type II diabetes mellitus, hypertension, hyperlipidemia, migraines, obesity, and allergic rhinitis.  *Id.* Continuing gastrointestinal symptoms are recorded in February and March of 2021.  *Id*.

In June 2021, Plaintiff "presented with complaints of persistent low back pain (B4F/360)."  *See* Tr. 1084. "He reported pain around 6 out of a maximum 10 in intensity despite TENS unit use and over the counter medication.  He also reported an exacerbating accident fall two months prior, and that he could only walk around ¼ of a mile twice a week due to his waxing and waning right knee pain.  Upon examination, the claimant appeared alert, oriented in all three spheres, with a steady gait, negative straight leg raise testing and normal motor strength.  The claimant was treated with therapy, gait training, exercise, and gait training."  Tr. 19. Continued bowel irregularity was reported in July 2021.  *Id*.

In August 2021, Plaintiff had a gastroenterology consultation when he "was diagnosed with mixed irritable bowel syndrome, and he was treated with adjustments to his conservative medications."  He reported no pain. Tr. 20.  In September 2021, Plaintiff followed up "on his hypertension with complaints of allergy fare up" with pain reported around "a 7 out of a

maximum 10 in intensity, noncompliance with his hypertension

medications, and difficulty using his CPAP machine."  *Id*.

In October 2021, Plaintiff had a "follow up on his diabetes mellitus

and non-proliferative diabetic retinopathy with bilateral macular edema

(B7F/23-26)."  *Id*.

> He continued to complain of obstructive sleep apnea and
> allergic rhinitis.  Upon examination, he demonstrated
> bilateral 20/25 vision.  He was diagnosed with diabetes
> with mild diabetic retinopathy, a right chorioretinal scar,
> and bilateral refractive error with presbyopia.  The
> claimant was generally treated with adjustment to his
> conservative medications and monitoring.

*Id*.  Further,

> [i]n August and November of 2021, claimant missed
> outpatient physical therapy services and was marked as
> homeless due to relinquishing his voucher to move to
> Marianna to take care of his elderly mother (B2F/184,
> B4F/29, B7F/12-20, 42).  However, it was noted that he
> demonstrated normal mental signs, and was living
> independently and effectively managing his personal and
> financial affairs.  In December 2021, the claimant
> continued to report worsening stomach pains and
> accidental bowel movements and requested a doctor's
> letter to establish the condition for his disability application
> (B7F/11).

*Id*.

Plaintiff irregularly presented for follow-up on his diabetes mellitus

and other reported conditions from September 2021 through March 2022

(B8F/16-20).  *Id*.

> However, he denied chest pain, shortness of breath, nausea, vomiting, abdominal pain, polyuria, and polydipsia.  Upon examination, the claimant was around 74 inches tall and weighed around 254 pounds.  He appeared awake, alert, oriented, and with normal speech and nonlabor breathing.  Routine laboratory workups were unremarkable.  He was diagnosed with Type 2 diabetes mellitus, dyslipidemia, diabetic neuropathy, obesity, vitamin D deficiency, obstructive sleep apnea, and irritable bowel syndrome.  He was treated with CPAP machines, adjustment to his conservative insulin medications, and referrals for eye examinations.  The claimant periodically presented for follow-up laboratory workups of medication management through April of 2022 (B8F).

*Id*.

In October 2016, Plaintiff had a motor vehicle accident and presented to the Bone and Joint Clinic for treatment from October 2016 until March 2022.  Tr. 20.  Complaints, treatments, and MRI results are noted.  *Id*.

> He reported around 50% improvement, but only temporarily, as well as not working since June 2018.  By October 2018, the claimant's provider was still writing him doctors notes stating that he was unable to work due to ongoing treatments over 2-3 months for his persistent residual neck and back pain (B1F/12).

Tr. 21.

"From October 2018 to April 2019, the claimant regularly presented for follow up medication management for his persistent low back and right hip pain.  He denied any medication side effects but reported pain around a 6-7 out of a maximum 10 in intensity."  *Id*.

[I]n December of 2019 the claimant requested a doctor's note for an additional 90 days off of work from the post office, but his provider noted it was not medically warranted (B1F/5).  In March of 2020, the claimant returned with reports of worsening symptoms of bilateral hip and low back pain, with shooting right leg pain and numbness and tingling in the feet (B1F/1).  He endorsed exacerbation from sitting more than standing, he denied any medication side effects.

*Id*.

Upon examination [at the Bone and Joint Clinic], the claimant was 6 feet 2 inches tall, weighed around 227-260 pounds, and had blood pressure around 139/91 (B1F).  He appeared alert, oriented in all three spheres, and in no acute distress.  He exhibited no difficulty moving the extremities, regular heart rate and rhythm, unlabored respiration, a soft/nontender abdomen, and no edema or significant tenderness to palpation.  He demonstrated normal motor strength, intact sensation, normal reflexes, negative straight leg raise testing, and no clonus.  However, he exhibited an antalgic gait and reduced 1+ pedal pulses, as well as intermittent tenderness over the right greater trochanter.  The claimant was diagnosed with lumbar degenerative disc disease, lumbar facet syndrome, mild L4-L5 left foraminal stenosis, L4-L5 annular tear with fissure, right sacroiliac joint pain, status-post motor vehicle accident, and a history of lumbar radiofrequency ablation.  The claimant was treated with unsuccessful rounds of injection therapy, physical therapy, and conservative medication, and he was recommended for a lumbar medial branch block/rhizotomy.  Though it was noted the claimant was prescribed Tylenol #3, it was discontinued after he refused follow up drug screens (B1F/7).

Tr. 21

"From June to November of 2021, the claimant also periodically presented to North Florida Sports Medicine Clinic for diagnoses and treatment (B5F)."  Tr. 21.  Plaintiff had a slip and fall at a restaurant in June 2021 resulting in complaints of persistent right knee and low back pain. Plaintiff reported Intermittent back issues since the 2016 motor vehicle accident "as well as a long break [and] right knee pain treatment prior to this exacerbation (B5F/22, 39)."  *Id.*  By July 2021, Plaintiff "was still exhibiting an antalgic gait" and "MRIs showed micro tearing of the right distal quad tendons and proximal patellar tendon, as well as chondromalacia changes in the medial compartment of the right knee (B5 F/18, 23-26).  The diagnostic imaging also showed a L4-L5 disc bulge with mild to moderate spinal canal stenosis."  *Id*.

In August 2021, Plaintiff "presented with complaints of intermittent residual back pain around an 8 out of a 10 maximum in intensity, and persistent right knee pain around a 7 out of a maximum 10 (B5 F/28).  He characterized his pain as achy, sleepy, weak, and sore, and he exhibited [an] abnormal guarded gait."  Tr. 21-22.

> In October of 2021, Plaintiff returned [to the North Florida Sports Clinic] with complaints of persistent right knee pain since his slip and fall, characterized at a 6 out of a maximum 10 in intensity (B5F/20-22).  He endorsed decreased right knee strength and difficulty walking.  He exhibited some mild right knee swelling, tenderness to

palpation in the medial joint, and a slight limp.  He was treated with right knee cortizone shots, which reportedly brought significant improvement.  However, by November 2021, the claimant returned with complaints of continued right knee pain (B5F/1).  Upon serial examination, the claimant was generally 6 feet 2 inches tall, weighed around 255-262 pounds, had blood pressure around 100/70, and had a BMI of 33.5. He showed no tenderness to palpation and ambulated without difficulty, but he also showed pain with full range of motion.  His other physical findings were generally benign.  The claimant was diagnosed with right knee pain with degenerative changes, as well as lumbar intervertebral disc displacement, muscle spasm and sprains of the thoracic and lumbar spine, sacral somatic dysfunction of the sacral region, and neuropathic pain.  The claimant's conservative treatments, physical therapy, knee sleeve, and Mobic were continued.  He was also recommended to avoid sports, domestic work, and heavy lifting during treatment (B5F/31).

From July to December of 2021, the claimant also periodically presented to Magnolia Chiropractic Clinic for consultation and treatment (B6F).  The claimant initially presented following a slit and fall with complaints of residual acute low back pain and inner right knee pain. He endorsed intermittent pain around 6-9 out of a maximum 10 in intensity, characterized as non-radiating, achy, tight, sore, and stiff.  He reported exacerbation by bending, carrying, lifting, pushing, pulling, reaching, sitting, or squatting. In December of 2021, the claimant again returned with complaints of residual intermittent back pain around 7 out of a maximum 10 in intensity. Upon examination, the claimant was…, weighed around 235-255 pounds, and had blood pressure around 115/80–130/95.  He demonstrated an abnormal guarded gait, lumbosacral muscle spasms, pain with lumbar range of motion, decreased 4/5 lower extremity strength bilaterally, pain with right knee motion, and somewhat diminished patellar and Achilles reflexes.  By December of 2021, he

> was exhibiting two lumbar paraspinal trigger point
> tenderness, antalgic gait, decreased bilateral L5-S1
> sensation, slightly reduced right knee range of motion,
> reduced lumbar range of motion, reduced 3-4/5 hip
> strength, and reduced 4/5 ankle and to strength, but
> otherwise showed negative straight leg raise testing,
> normal sensation, normal lower extremity strength, and
> otherwise benign physical signs.  The claimant was
> diagnosed with lumbar sprain and right knee effusion, as
> well as lumbar intervertebral disc displacement,
> segmental and somatic sacral dysfunction, and
> neuropathic pain.  He was treated with adjustments,
> trigger point injections, and conservative therapies for
> which it was noted he responded well to treatment.

Tr. 22.

In July 2021, an independent consultative examiner, Dr. Banner,

conducted a physical exam of Plaintiff, (B3F).  Tr. 22-23.  Plaintiff's

reported medical history and examination are discussed.  *Id.*  "Dr. Banner

diagnosed the claimant with severe constant irritable bowel syndrome,

Type 2 diabetes mellitus, bilateral foot pain, chronic lower back pain,

bilateral knee pain, sleep apnea, and a history of untreated hypertension."

Tr. 23.

> From January to July of 2022, the claimant also
> periodically presented to Texas Healthcare Neck and
> Back Clinics for consultation and treatment of his
> persistent low back and right knee pain (B11F).  In
> January of 2022, the claimant presented for follow up on
> a slip and fall accident with residual low back and right
> knee pain (B11F/2-10).  He endorsed moderate dull pain
> radiating to the right leg on a frequent basis.  He reported
> a history of low back injury in 2016 from a motor vehicle

accident, with residual pain around a 3 out of a maximum 10 in intensity, and exacerbated pain to around a 7 out of a maximum 10 since his slip and fall.  He also reported missing seven months of work since the slip and fall. Upon serial examination, the claimant demonstrated a normal gait, normal L1-S1 myotomes, normal balance and neurological signs, normal reflexes, stable Apley's Compression Test, no joint effusion, and normal sensation.  However, he also showed pain with right knee motion, tenderness to palpation over the right knee medical joint line, a restricted thoracolumbar range of motion in all planes, and tenderness to palpation on thoracic, lumbar, and gluteal trigger points.  Follow up lumbar imaging showed lumbar intervertebral disc displacement (B11F/12).  The claimant was initially diagnosed with lumbar and lower extremity segmental and somatic dysfunction, low back strain, thorax wall strain, right knee sprain, and muscle spasm. During his regular follow ups, he received diagnoses of right knee chondromalacia and right knee pain aggravated by a fall, as well as L4-L5 disc herniation and lumbar facet/ligament injury.  The claimant was treated with conservative and chiropractic care.  It was noted that his low back pain was slowly improving with continued activity related flare ups, but he continued to report persistent right knee pain despite injection therapy (B11F/19).  The claimant was released from care in July of 2022.

From March to August of 2022, the claimant also periodically presented to the Comprehensive Spine Center of Dallas for consultation and treatment of his persistent lumbar and right knee pain (B9F, B13F, B14). Review of the record shows a history of hernioplasty in 2021, anxiety, and low back injury in 2016 with a subsequent lumbar medical branch block in 2017.  It was noted that he reported improved symptoms until his exacerbating slip and fall in June of 2021 (B9F/2-13, B13F/1-12).  In March and April of 2022, the claimant presented with complaints of residual right knee and low

back pain from a slip and fall in June of 2021.  Prior to his fall he alleged his osteoarthritic right knee pain was tolerable, and he reported no current relief from over-the-counter treatments or biweekly chiropractic care.  He reported ongoing trigger point injections and conservative medication.  He endorsed peripheral neuropathy, diabetes mellitus, insomnia, hemorrhoids, diarrhea, constipation, abdominal pain, medial right knee pain, and lumbar pain with exacerbation from twisting, lifting, and prolonged sitting.  He also reported difficulty bending, squatting, and running.  However, he also denied radicular symptoms and repeatedly denied any bowel or bladder dysfunction.  By his recent visit in May of 2022, he was reporting through telemedicine that he was having increased difficulty walking and requested a prescription cane.  His treating physician continued his conservative treatments after further injection therapies were declined (B9F/21, B13/22).  The record also shows that in May of 2022, the claimant's request for a walking cane was approved by a Dr. Arash Bidgoli, who certified the assistive device was medically necessary (B14F).  However, the available record showed no accompanying medical exam was performed and no related medical impairment was checked off on the approval form.  By June of 2022, he was reporting moderate relief from right knee injections, and he underwent an L3-L5 medical branch block with a reported a temporary 70% reduction in symptoms (B9F/27-30).  He continued to report achy, constant, and throbbing lumbar pain, right knee popping, and exacerbation with prolonged weightbearing activities.  By August of 2022, the claimant was presenting for follow up via telehealth with reports of improvement in his knee pain, with good progress and only intermittent exertion related flare ups (B13F/44).  He also requested only conservative treatments for his lumbar pain, denying further injections due to some improvement here as well.  The claimant further requested to be released from his therapy program.

> Upon serial examination, the claimant was…, weighed
> around 245 pounds (B9F, B13F).  He appeared well-
> groomed, well developed, pleasant, cooperative, alert,
> oriented in all three spheres, and with a normal mood and
> affect, and with appropriate insight.  He exhibited normal
> heel-toe and tandem walking, no edema, normal
> sensation, negative straight leg raise testing, a stable
> right knee, and full motor strength.  However, he showed
> right knee tenderness to palpation on the medical femoral
> epicondyle and medical joint line, a positive patellar grind
> test, L3-L5 tenderness to palpation, and reduced lumbar
> and right knee range of motion.  Follow up MRIs showed
> L4-L5 disc bulging with mild to moderate spinal canal
> stenosis, and right knee chondromalacia with joint
> effusion but no meniscal tearing.  The claimant was
> diagnosed with right knee chondromalacia aggravated by
> a fall, lumbar facet and ligament injury, and lumbar L4-L5
> disc herniation.  The claimant was treated with tramadol,
> a series of right knee and L4-S1 injections, low impact
> exercise, and stretching.  He generally reported some
> post injection and medial branch block improvement, but
> some continued symptoms.

Tr. 23-24.

After referring to Plaintiff's medical records which are substantially

reported above, the ALJ concludes that "the medical record does not

support the intensity, persistence, or limiting effects of the claimant's

impairment related symptoms to the extent alleged.  However, taking into

consideration the intensity and pervasiveness of his symptoms as

consistent with the detailed record," the ALJ found "that the exertional,

postural, environmental, and restroom related limitations in the above

[RFC] adequately address the claimant's combined medically determinable impairments."  Tr. 24-25.

The ALJ continued:

> Addressing his reportedly worsening knee pain, the record shows only evidence of micro tears.  Furthermore, a few weeks after the fall he sustained in 2021, he reported to the VA that he was walking ¼ mile twice a week (B4F/32).  The claimant also testified that he frequently traveled back and forth from Florida to Texas and admitted to driving to and from there on at least one occasion (Hearing Testimony).  Though the claimant's doctor opined use of a cane was medically necessary, and the claimant requested a prescription cane during a telehealth visit early in May of 2022, later that month he was able to perform tandem and heel-toe walking, and it was noted that his knee was stable (B9F/24, 25).  Prior examinations in March and April of 2022 showed full motor strength.  Later exams after his slip and fall do show some gait disturbance; however, the available record shows no significant objective evidence regarding his knee and back to support more than temporary restriction here.  The included exertional, postural, and environmental limitations adequately address these concerns.  As far as his irritable bowel syndrome, there the available record showed no objective evidence of a significant gastrointestinal disorder, and his symptoms are adequately addressed with the included outdoor work/restroom access limitation.

Tr. 25

3.

At this point in the decision, the ALJ considered "the physician opinion evidence" of the Disability Determination Service reviewing physicians, Dr. Prianka Gerrish, M.D., (reconsideration-March 28, 2022,

(B3A) Tr. 95-102), and Dr. Steven Arkin, M.D., (initial-August 25, 2021,

(B1A) Tr. 85-93) and concluded they were both "persuasive overall."

Tr. 25-26.[14]  The ALJ found Dr. Gerrish's assessment persuasive overall

(B3A).

> Dr. Gerrish reviewed the record and completed a residual
> functional capacity assessment in March of 2022.  Dr.
> Gerrish diagnosed the claimant with severe unspecified
> arthropathies.  She recommended light exertional
> limitations, and up to six hours of sitting, six hours of
> standing, and six hours of walking. In addition, she
> recommended the claimant was limited to occasional
> climbing of ramps, stairs, ladders, ropes, or scaffolds;
> frequent balancing or stooping; and occasional kneeling,
> crouching, or crawling. She additionally recommended the
> claimant avoid concentrated exposure to workplace
> hazards such as moving machinery or unprotected
> heights.  She noted consistent allegations of pain and
> limitations on activities of daily living, with confirming
> diagnoses and imaging, as well as examination reports
> showing improvement with cortisone injections, normal
> ambulation, no tenderness to palpation, pain with full
> range of motion, and continued conservative medication.
> *However, later evidence appearing in the record at the
> hearing level supported slightly stricter climbing,
> balancing, stooping, kneeling, crawling, and bathroom
> access limitations* (e.g., B8F-B14F, Hearing Testimony).
> As her opinions were generally supported by and
> consistent with the detailed longitudinal record, I find them
> persuasive overall.

Similarly, the ALJ also found the physical assessment of Dr. Arkin

persuasive overall (B1A).

---

[14]  Plaintiff's amended disability onset date is March 15, 2021.  Tr. 10, 58.

Dr. Arkin reviewed the record and completed a residual functional capacity assessment in August of 2021.  Dr. Arkin diagnosed the claimant with severe disorders of the skeletal spine. He recommended light exertional limitations, and up to six hours of sitting, six hours of standing, and six hours of walking. In addition, he recommended the claimant was limited to frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; and occasional balancing, stooping, kneeling, crouching, or crawling.  He additionally recommended the claimant avoid all exposure to extreme heat, and even moderate exposure to extreme cold, wetness, humidity, noise, vibration, poor ventilation and pulmonary irritants, or workplace hazards such as moving machinery or unprotected heights.  He noted consistent allegations of pain and limitations on activities of daily living, with confirming diagnoses and imaging, as well as examination reports showing normal reflexes, intact fine/gross manipulation, normal gaits, normal upper extremity strength, intact sensation, normal muscle tone, negative straight leg raise testing, and no atrophy or paraspinal muscle spasms, but also abnormal colonoscopy, decreased 4+/5 bilateral grip strength, decreased 4+/5 bilateral lower extremity strength, unsuccessful steroid injection therapy, high BMIs, difficulty squatting, decreased range of motion, Romberg ataxia, slow steps, difficulty transferring on and off the exam table, and provider notes that lifelong medical, orthopedic, and pain management care is required. *However, later evidence appearing in the record at the hearing level supported slightly stricter climbing, balancing, stooping, kneeling, crawling, and bathroom access limitations*.  *As his opinions were generally supported by and consistent with the detailed longitudinal record, I find them persuasive overall.*

Tr. 25-26 (emphasis added).[15]

On July 21, 2021, Dr. Banner conducted a physical assessment of Plaintiff.[16]  Tr. 26, 714-24.  The ALJ found the independent consultant's assessment

> only somewhat persuasive (B3F).  Dr. Banner reviewed
> the record, examined the claimant, and completed a
> medial source statement in July of 2021.  Dr. Banner
> diagnosed the claimant with severe constant irritable
> bowel syndrome, Type 2 diabetes mellitus, bilateral foot
> pain, chronic lower back pain, bilateral knee pain, sleep
> apnea, and a history of untreated hypertension.  Although
> he did not recommend specific limitations, his objective
> findings generally supported the above residual functional
> capacity.  However, he further opined that the claimant
> could need lifelong medical care, orthopedic care, and
> pain management, but also that it would be very difficult
> for him to sustain gainful employment until some/all of his
> medical conditions were resolved (e.g. B4F-B14F,
> Hearing Testimony).  *As later evidence showed, the
> claimant was able to receive regular medical care and his
> injury related symptoms improved and resolved.  As his
> opinions were generally supported by the evidence
> available at the time, as well as his own notes, I find them*

---

[15]  The findings of a State agency medical consultant may provide additional evidence to support the ALJ's findings.  *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  *See also Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (unpublished) ("the weight to be given [to] a non-examining physician's opinion, depends, among other things, on the extent on which it is supported by clinical findings and is consistent with other evidence.").  Here, the ALJ, contrary to the agency consultants, determined Plaintiff has "slightly stricter climbing, balancing, stooping, kneeling, crawling, and bathroom access limitations."  Tr. 25-26.

[16]  Dr. Banner is not a treating physician, so his opinion was not entitled to deference or special consideration.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (*citing McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (explaining that one-time medical examiners are not "treating physicians" and thus "their opinions are not entitled to deference") (citation omitted).

*persuasive where consistent with the above residual functional capacity.*

Tr. 26 (emphasis added).

4.

The ALJ next considered the physical assessment by Plaintiff's treating physician, Dr. Joshua Ramirez, D.O., which included a two-page clinical assessment of pain and physical capacities evaluation (RFC assessment) (B10F),[17] Tr. 1328-29, and found it "unpersuasive overall" and noted:

> Dr. Ramirez had a long-term treating relationship with the claimant and completed a medical source statement in July of 2022. Dr. Ramirez noted the claimant had intractable and virtually incapacitating pain, had greatly increased pain with physical activity that would cause task distraction or abandonment, and had severe medication side effect that cause distraction or drowsiness.  He opined the claimant could lift up to 5 pounds occasionally and 1 pound frequently, and could sit for up to 1 hour,

---

[17]  Notwithstanding Plaintiff's "long-term treating relationship with" Dr. Ramirez, generally, courts have found checkbox notations are "not particularly informative" and are "weak evidence at best."  *See Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); *Dixon v. Astrue*, No. 5:09-cv-320/RS/EMT, 2010 U.S. Dist. LEXIS 125831, at *46-48  (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); *see also Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony).

stand for up to 1 hour, or walk for up to 1 hour out of an 8-hour workday.  He could rarely push or pull arm or leg controls, could never balance or climb stairs or ladders, could occasionally perform gross manipulation, could frequently perform fine manipulation, could never bend or stoop, could rarely reach, could occasionally have exposure to environmental allergens, could never operate a motor vehicle, and could never work around hazardous machinery.  He further opined the claimant required a cane for ambulation due to his low back and knee pain, and he would be absent for more than four workdays per month.[18]  However, his opinion is unsupported by the detailed objective evidence and clinical findings.  The detailed record shows the claimant's neuropathy only affects his toes, he only asked for a cane for ambulation around four months ago, a restriction that is likely temporary, and he was able to drive to Texas from Florida and back (e.g. B9F/24, 25, B13F).  As his opinions were generally unsupported by and inconsistent with the detailed longitudinal record, I find them unpersuasive overall.

Tr. 26-27.[19]

As noted herein, the regulations do not preclude an ALJ from referring to evidence discussed elsewhere in the decision when evaluating medical opinions.  *See generally Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).  Further, the ALJ's decision should be considered as an

---

[18]  Dr. Ramirez's RFC determination is quite at odds with the ALJ's RFC determination.  *Compare* Tr. 16-17 and *supra* at 5 *with* Tr. 26-27 stated above.

[19]  Although the ALJ determined Plaintiff's mental condition, such as depression, was non-severe, Tr.13, the ALJ considered the mental health opinion evidence of two Agency reviewing psychologists.  Tr. 27.

"entire opinion." *Bradford v. Sec'y of Dep't of Health & Human Servs*., 803 F.2d 871, 873 (6th Cir. 1986).

The ALJ did not err when finding the opinion of Dr. Ramirez "generally unsupported by and inconsistent with the detailed longitudinal record" and "unpersuasive overall."  Tr. 27.  *See Serrano v. Comm'r of Soc. Sec.*, No. 4:19cv241-AW-HTC, 2020 WL 5550505, at *7 (N.D. Fla. Aug. 7, 2020) ("The ALJ's explanation that Dr. Dickens' opinions are not supported by the objective examinations is also not conclusory.  To the contrary, the ALJ states that he is referencing the objective examinations discussed elsewhere in this opinion.")  Stated otherwise, in reading the ALJ's decision, it is evident that the ALJ's consideration of Dr. Ramirez's opinion was not erroneous.

Pursuant to the new regulatory framework, the ALJ properly discussed the supportability and consistency of Dr. Ramirez's opinion. Tr. 26-27.  The ALJ noted that in July 2022, Dr. Ramirez opined Plaintiff was limited to lifting 5 pounds; sitting, standing, and walking to 1 hour; rarely or never engage in most postural activities; only occasionally perform manipulation; and required a cane for ambulation.  Tr. 26-27, 1328-29.  The ALJ determined that Dr. Ramirez's opinion was unpersuasive.  Tr. 27.

Applying the supportability factor, the ALJ explained Dr. Ramirez's clinical findings did not support his opinion.  Tr. 27.  *See* 20 C.F.R. § 404.1520c(c)(1).   Early in the decision, the ALJ explained that Dr. Ramirez's objective examinations revealed only mild abnormalities that he treated with conservative care.  Tr. 23, 1331-39, 1341, 1348-49. Addressing the consistency factor, the ALJ further explained that Dr. Ramirez's extreme opinion was inconsistent with Plaintiff's objective clinical evidence that showed minimal neuropathy in his admitted evidence activities including his ability to drive to Texas.  Tr. 27, 1316-17, 1436-81. *See* 20 C.F.R. § 404.1520c(c)(2).  It appears driving to Texas directly conflicts with Dr. Ramirez's limitations that Plaintiff could only sit for 1 hour in an 8-hour day because it required him to drive 12 hours with only 1 stop. Tr. 60.

The ALJ addressed Dr. Ramirez's opinion in light of her previous discussion of the medical evidence thereby incorporating her prior discussion of the medical evidence and prior administrative medical findings and her consideration of the opinion evidence.  Tr. 26-27.  It is not necessary to recap all of the evidence.  *See Moore*, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.").

5.

The ALJ concluded the RFC assessment as follows.

Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the overall record. The above residual functional capacity is a reflection of the most work-related functions that the claimant can do on a regular and continuous basis since the amended alleged onset date. As detailed in this decision, a preponderance of the evidence shows the claimant's impairments and related limitations are adequately accommodated by the residual functional capacity.  For example, though the claimant asked for an assistive device during a May 2022 telehealth appointment, examination findings both before and after the request do not support the need for a cane. The claimant has full strength in his lower extremities, his lumbar MRIs did not show any nerve involvement, and he only complains of neuropathy in his toes.  In his August 2022 visit with Dr. Bigoli, the claimant declined additional knee injection and asked to be released from treatment (B13F/44).

Despite his subjective complaints, the available evidence shows that the claimant's symptoms are adequately controlled with both conservative and over the counter medication, that he is able to ambulate effectively at a reduced level of exertion without an assistive device, and that he is able to function adequately in routine activities of daily living with occasional and/or little assistance.  As detailed in this decision, this is inconsistent with the claimant's allegations of disabling limitations, when considered under the requirements of SSR 16-3p.  Based on the detailed evidence, I find that, though the claimant had good days and bad days, he can perform work within the above residual functional capacity on a sustained basis.  Although it is reasonable to find that the claimant has some limitations in work-related functions resulting from his impairments, for the reasons explained herein

> and in Finding 10, [*see* Tr. 29-30] the available evidence
> does not establish functional limitations that would
> preclude all regular and continuous work-related activity
> within the bounds of the above residual functional
> capacity.

Tr. 28.

6.

The ALJ evaluated Plaintiff's subjective allegations of pain and

limitations under the proper legal standard and provided reasons for

discounting his subjective complaints of disabling pain, notwithstanding

evidence to the contrary as noted by Plaintiff.  The ALJ considered

objective evidence of Plaintiff's impairments and there is substantial

evidence to support her conclusion that the evidence did not support the

extent of Plaintiff's complaints or limitations.

As noted herein, the ALJ considered, but rejected, the opinion of

Dr. Ramirez that Plaintiff is disabled in light of his long-term treatment

records and the other medical records of record.  No error has been shown.

**V.  Conclusion**

Considering the record as a whole, the findings of the ALJ are based

upon substantial evidence in the record.  The decision of the Commissioner

to deny Plaintiff's application for DIB is **AFFIRMED.** The Clerk shall enter

Judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on January 17, 2024.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**